E-FILED
Friday, 23 September, 2022  03:20:14 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| LUKE BRYANT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| SPARC, STEVE NARDULLI, MARY TRASK, JOHN HOWERTER, and GREG O'CONNOR, | ) ) ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

## Complaint

The Plaintiff, LUKE BRYANT ("Bryant"), in support of his complaint against the Defendants, SPARC ("Sparc"), STEVE NARDULLI ("Nardulli"), MARY TRASK ("Trask"), JOHN HOWERTER ("Howerter"), and GREG O'CONNOR ("O'Connor"), states as follows:

### I. Nature of Complaint and Jurisdiction

1.      In his lawsuit Bryant alleges violations of the anti-retaliation provisions of both Title VII of the Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e−3(a), and the Illinois Human Rights Act, 775 ILCS 5/6-101.

2.      Bryant also is bringing a claim against SPARC under federal law. As such, there is a federal question that gives this Court jurisdiction under 28 U.S.C. § 1331. The claims that are brought under the Illinois Human Rights Act grow out of the same set of circumstances as the federal claims and this Court has supplemental jurisdiction to hear those claims under 28 U.S.C. § 1367.

## II. Parties

3.       Bryant is an adult who was formerly employed by Sparc. His employment with SPARC was involuntarily terminated on July 28, 2021. At times relevant to these proceedings he was employed as Sparc's Director of Programs and Services.

6.       Sparc is a not-for-profit organization located in Springfield, Illinois. At all times relevant to this proceeding it has employed in excess of 20 individuals. It defines its mission as follows:

> To enrich the lives of those with intellectual and developmental disabilities by enabling them to successfully live, learn, work and socialize in the community.

7.       Nardulli is an adult and at all times relevant to these proceedings served on Sparc's Board of Directors as its vice president. Nardulli was personally involved in making all of the decisions that form the basis of the Plaintiffs' claims.

8.       Trask is an adult and at all times relevant to these proceedings served on Sparc's Board of Directors as its president. Trask was personally involved in making all of the decisions that form the basis of the Plaintiffs' claims.

9.       Howerter is an adult and at all times relevant to these proceedings served on Sparc's Board of Directors. Howerter was personally involved in making all of the decisions that form the basis of the Plaintiffs' claims.

10.       O'Connor was previously employed by Sparc as its Chief Executive Officer until he retired from that position on or about July 29, 2021.

### III. Factual Background

11.     During the period of time that he served as Chief Executive Officer, O'Connor made sexual advances and sexually harassed multiple employees. Bryant was one of the victims of such inappropriate conduct by O'Connor.

12.     Bryant first reported his concerns about O'Connor's actions to Sparc's vocational director, Anne Clemons. Clemons encouraged him not to take his complaint any further.

13.     On May 20, 2021, Bryant reported what had happened with O'Connor to Mary Flesch, Sparc's then Director of Human Resources.

14.     When Bryant reported his concerns to Flesch, his immediate supervisor, Josh Sergent was present with him and supported Bryant.

16.     Bryant opposed sexual harassment and made it clear to Sparc that he opposed such actions.

17.     Rather than conducting an investigation, Flesch notified O'Connor of the allegations that had been made against him by Bryant.

19.     O'Connor began taking retaliatory action against Bryant almost immediately. This included stripping his job duties, demoting him, and making him move to a different job location.

20.     O'Connor also began taking retaliatory actions against others who he believed were supportive of O'Connor.

21.     O'Connor also told Ryan Dowd that he believed that it was Sergent who was pressuring Bryant to make the allegations against him.

23.     On the evening of June 22, 2021, Bryant, through legal counsel, sent an email to both O'Connor and Trask. In that email he again outlined the concerns and objections he had about O'Connor's sexual harassment of him and also outlined concerns that he was being retaliated against for reporting the sexual harassment.

24.     In his June 22, 2021, email Bryant requested that a "thorough and unbiased investigation" be undertaken into O'Connor's actions.

25.     Upon receiving the email from Bryant's counsel, O'Connor reached out to Nardulli regarding the matter.

26.     On the morning of June 23, 2021, Nardulli and O'Connor met with one another to discuss the allegations.

27.     Rather than having an independent person conduct an investigation, Sparc determined that it would have Nardulli conduct the investigation into Bryant's allegations.

28.     Nardulli was far from an independent investigator. Early on in his investigation he questioned witnesses about what Bryant's allegations with O'Connor present.

29.     Many individuals at Sparc did not feel comfortable with Nardulli conducting any sort of an investigation because they believed that he was biased and that his investigation would be used to protect the interests of O'Connor.

30.     Rather than engaging in an impartial investigation into O'Connor, Nardulli decided that he would put the job performance of Bryant and others who supported him under the microscope.

33.     On July 6, 2021, Bryant filed a charge of retaliation with both the Illinois Department of Human Rights and the EEOC. That charged alleged that he had been retaliated against by Sparc, O'Connor, and Nardulli.

35.     Sparc was very promptly notified that Bryant had filed a complaint with the Illinois Department of Human Rights.

36.     Nardulli wanted to interview both Bryant, purportedly to investigate Bryant's allegations against O'Connor. Bryant expressed concerns about being interviewed by Nardulli because he felt as though his investigation was biased and because he had a conflict of interest in that he had already filed legal action specifically against Nardulli.

37.     Bryant was told that he had to submit to an interview with Nardulli as a term and condition of his employment. Based upon that directive, he agreed to do so.

38.     The interview of  Bryant occurred on or about July 12, 2021.

39.     During the interview it was very clear that Nardulli had no interest in discussing or addressing Bryant's allegations of sexual harassment or that he had been retaliated against. Instead Nardulli used the interviews as a pretext for trying to build a case of misconduct against both Bryant and Sergent.

40.     Despite Nardulli's desire not to address the issue of the sexual harassment, Bryant brought the issue up at the end of the interview. Nardulli did not want to hear about it. At that point Bryant provided damning evidence that O'Connor had done the same thing to others to Nardulli's attention.

41.     Nardulli clearly knew that O'Connor had many issues on the job and knew that O'Connor had sexually harassed multiple employees.

42.     Despite the clear evidence of O'Connor's misconduct Nardulli and the Board did not want to dismiss him from his employment with Sparc.

43.     On July 28, 2021, Sparc terminated Bryant's  employment.

44.     Rather than terminating O'Connor's employment with Sparc, he was allowed to voluntarily resign on July 29, 2021. The Board of Directors at Sparc, despite knowing full well the serious and founded allegations that had been established against O'Connor, made a glowing public statement about him upon his retirement. In part, that statement read:

> Sparc sincerely appreciates the level of service he has devoted to
> the agency and the people we support. Unlike some, who merely
> fill a role, he fulfilled his role with an immeasurable amount of
> passion. We will continue to embrace the tagline which he
> helped bring to life each day which was "Celebrate the Triumph
> of the Human Spirit." He has truly earned his retirement, and
> will now take some time and just enjoy a stress-free, work-free,
> garden rich lifestyle.

### Charges of Discrimination

45.     On or about July 6, 2021, Bryant filed a charge of discrimination that alleged he had been retaliated against for engaging in protected activity with both the Illinois Department of Human Rights and the EEOC. That charged named Sparc, O'Connor, and Nardulli as parties.

47.     On or about November 11, 2021, Bryant filed a second charge of discrimination with both the Illinois Department of Human Rights and the EEOC. That charge identified Sparc, Nardulli, Trask, and Howerter as parties and alleged

retaliation, that included his termination from employment.

50.     The Illinois Department of Human Rights has issued a notice to
Bryant allowing him to file a lawsuit under the Illinois Human Rights Act.
This lawsuit is being timely filed.

51.     The EEOC has also issued notices to Bryant. Those notices indicate
that he can file a lawsuit stemming from the charges that he had previously
brought in July 2021 and November 2021. This lawsuit is being brought in a timely
fashion.

## Count I
### Bryant's complaint against Sparc under Title VII

52.     Paragraphs 1-51 are incorporated herein.

53.     Sparc has engaged in retaliation against Bryant that has included the
termination of his employment, amongst other forms of retaliation. That retaliation
has stemmed from his engaging in activities protected under Title VII.

54.     But for Bryant's protected activities, his employment with Sparc would
not have been terminated and he would not have been subjected to the other forms
of retaliation outlined above.

55.     Bryant has sustained damages as a result of the unlawful actions of
Sparc.

Wherefore, Bryant respectfully requests that this Court enter judgment in
his favor and against Sparc and provide the following relief:

1.     An award of damages for the injuries that he has sustained.

2.     An award of attorney fees and costs associated with bringing this

claim.

3.      An award of reinstatement to his former position of employment or other equitable relief as appropriate.

4.      An award of punitive damages.

5.      Any other relief that is proper.

## Count II
### *Bryant's complaint against Sparc, Nardulli, Trask, O'Connor, and Howerter under the Illinois Human Rights Act*

64.      Paragraphs 1-51 are incorporated herein.

65.       Sparc, Nardulli, Trask, O'Connor, and Howerter, have all engaged in retaliation against Bryant. That retaliation stems from his protected activity and includes multiple types of retaliation that includes his termination.

66.      Nardulli, Trask, and Howerter, were all officers of the Board of Directors at Sparc and were all intimately involved in the decision to terminate Bryant's employment.

67.      O'Connor, in addition to Nardulli, was involved in the retaliatory acts that occurred prior to Bryant's termination.

68.      But for Bryant's protected activities, his employment with Sparc would not have been terminated and he would not have sustained the other forms of retaliatory action outlined above.

69.      Bryant has sustained damages as a result of the unlawful actions of Sparc.

Wherefore, Bryant respectfully requests that this Court enter judgment in

his favor and against Sparc, Nardulli, O'Connor, Trask, and Howerter, and provide

the following relief:

1.   An award of damages for the injuries that he has sustained.

2.   An award of attorney fees and costs associated with bringing this

claim.

3.   An award of reinstatement to his former position of employment or

other equitable relief as appropriate.

4.   An award of punitive damages.

5.    Any other relief that is proper.

*Luke Bryant*
Dated:                          SEPTEMBER 23, 2022

/s/ John A. Baker
John A. Baker
BAKER, BAKER & KRAJEWSKI, LLC
415 South Seventh Street
Springfield, IL 62701
(217) 522-3445
(217) 522-8234 (Fax)
jab@bbklegal.com